SO ORDERED: December 15, 2005.



James K. Coachys
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INTERIOR DYNAMICS CORP., | ) | Case No. 03-21592-JKC-11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| INTERIOR DYNAMICS CORP. and | ) | |
| UNSECURED CREDITORS | ) | |
| COMMITTEE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 05-114 |
| | ) | |
| FASIL FURNITURE, LLC, | ) | |
| DISTRIBUTOR SERVICE, INC., and | ) | |
| BANK ONE, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter comes before the Court on Defendant Distributor Service, Inc.'s Motion for Partial Summary Judgment (the "Motion") and Plaintiffs Interior Dynamic Corp. and the Unsecured Creditors' Committee's Joint Cross-Motion for Partial Summary Judgment (the "Cross-Motion").

Having reviewed the parties' respective submissions, the Court issues the following Findings of Fact and Conclusions of Law.

## Findings of Fact

The parties' designated evidence reveals the following undisputed facts:

1. In January of 2003, Fasil Furniture, LLC "("Fasil") contracted with Target Corporation ("Target") to develop and manufacture furniture to be sold in Target stores (the "Target Contract"). Thereafter, Target issued a purchase order to Fasil in the amount of $926,681, whereby Fasil agreed to deliver certain finished wood furniture to Target.

2. On or about April 15, 2003, Debtor commenced operations primarily to develop plans, specifications, and prototypes to ultimately manufacture the furniture needed under the Target Contract.

3. On April 16, 2003, Fasil entered into a Manufacturing Agreement (the "Manufacturing Agreement") with Interior Dynamics Corporation ("Debtor"), whereby Debtor agreed to manufacture the finished wood furniture due under the Target Contract. On July 3, 2003, Debtor and Fasil entered into an Amended Manufacturing Agreement (the "Amended Manufacturing Agreement").

4. To manufacture the furniture for Fasil, Debtor purchased wood products primarily from Distributor Service, Inc. ("DSI"). In order to meet Debtor's needs, DSI had to procure a large volume of Baltic birch from suppliers in Russia.

5. DSI initially supplied product to Debtor on an "open term" basis, with a C.O.D. requirement should Debtor exceed its credit limit. However, given the volume of foreign product needed and DSI's knowledge that Debtor's contract with Fasil represented 90% of Debtor's

2

business, DSI suggested an escrow agreement between it, Fasil and Debtor.

6. On July 25, 2003, Debtor, Fasil, DSI and Bank One Trust Company, N.A., as escrow agent ("Escrow Agent"), entered into an Escrow Agreement (the "Escrow Agreement"), which provided a formula for the distribution of payments made under the Target Contract among Fasil, Debtor and DSI.

7. On or about September 8, 2003, and prior to the commencement of Debtor's bankruptcy case, Target made its first payment under the Target Contract in the amount of $287,376.00. The payment was made to Fasil which then deposited it with the Escrow Agent.

8. On or about September 10, 2003, the Escrow Agent distributed the payment to Fasil, Debtor and DSI according to formula provided in the Escrow Agreement.

9. On November 14, 2003, Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

10. The Escrow Agreement expired by its terms on December 31, 2003.

11. On or about February 28, 2004, Target made another payment under the Target Contract in the amount of $498,808.07 (the "Disputed Payment"). Fasil continues to hold the payment pending the outcome of this litigation.

12. On or about February 23, 3004, DSI filed a Proof of Claim in Debtors' case in the amount of $374,365.83. DSI filed an Amended Proof of Claim on March 23, 2004, in the amount of $386,891.21.

## Conclusions of Law

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to § 157(b)(2)(A), (B) and (C).

2.      Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). With a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.  After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322-23. If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question, then the court must enter summary judgment against it. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986)).

3.      In its Motion, DSI argues that it is entitled, as a matter of law, to a portion of the Disputed Payment pursuant to the Escrow Agreement and the payment formula contained therein. DSI further asks the Court to enforce a "constructive trust." In their Cross-Motion, Debtor and the Committee counter that the Escrow Agreement had already expired when the Disputed Payment was made and that DSI, therefore, has no legal claim to the Disputed Payment. They also argue against DSI's equitable claims to the Disputed Payment and insist that DSI is merely a general unsecured creditor of the estate.

4.      In analyzing the parties' arguments, the Court first looks to the terms of the Escrow

to determine whether the estate's rights in the Disputed Payment are superior to DSI's.

5. The essential question is whether the portion of the Disputed Payment that DSI would have received under the Escrow Agreement's formula is property of the estate. Unless some federal interest dictates otherwise, state law determines a debtor's property interests in bankruptcy. *Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *Butner v. United States,* 440 U.S. 48, 54- 56, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Krueger,* 192 F.3d 733, 737 (7th Cir.1999); *Fisher v. Apostolou,* 155 F.3d 876, 880 (7th Cir.1998).

6. The construction of a written contract is a question of law. *Eskew v. Cornett,* 744 N.E.2d 954, 957 (Ind.Ct.App.2001), *trans. denied.* When interpreting a contract, the Court's paramount goal is to ascertain and effectuate the intent of the parties. *Id.* This requires that the contract be read as a whole, and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. *Id.* When the language of a contract is clear and unambiguous, the intent of the parties is determined from the four corners of the instrument. *Id.* In such a situation, the terms are conclusive and the Court will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions. *Id.*

7. Section 8 of the Escrow Agreement states that the Agreement would terminate "on the *earlier* of (i) the date that the full amount of the Target Contract is disbursed pursuant to the terms of this agreement and (ii) December 31, 2003." (Emphasis added). From this clear and unambiguous language, which the parties neither modified nor waived, the Court concludes that the Escrow Agreement was no longer in effect when Target made the Disputed Payment and that DSI is no longer legally entitled to a share of the Disputed Payment.

8.     DSI makes several equitable arguments in support of its Motion. First, DSI contends that the Escrow Agreement "earmarked" a portion of the payments made under the Target Contract, arguing that "[b]ecause the respective rights of the parties were fixed when they signed the Escrow Agreement, the filing of the Debtor's bankruptcy petition should not defeat the undisputed intent of the parties regarding the 'earmarking' of Target's payments to Fasil." For purposes of this argument, the Court agrees that the Escrow Agreement was intended to "earmark" funds for DSI's benefit, but the Court cannot ignore the Agreement's clear and unambiguous language to effectuate the parties' intent. Once the Agreement expired, so too did DSI's claim to its share of the Disputed Payment. Furthermore, contrary to DSI's argument, the bankruptcy case did not "defeat" DSI's rights. According to principles of state contract law, when the Escrow Agreement expired by its express terms, the funds were simply no longer earmarked in favor of DSI.

9.     Second, DSI asks the Court to enforce a constructive trust upon the Disputed Payment.[1] A constructive trust may be imposed where a person holding title to property is subject to an equitable duty to convey it to another on the grounds that it would be unjustly enriched if he were permitted to retain it. *Strong v. Jackson*, 777 1141, 1150 (Ind.Ct.App.2002), *aff'd on rehearing*, 781 N.E.2d 770 (Ind.Ct.App.2003), *trans. denied*. A duty to convey the property may arise if it was acquired through fraud, duress, undue influence or mistake, or through a breach of a fiduciary duty, or through the wrongful disposition of another's property. *Id*. The type of fraud necessary for the establishment of a constructive trust may be either actual or constructive. *See Kalwitz v. Estate of Kalwitz,* 822 N.E.2d 274, 280 (Ind.Ct.App.2005), *trans. denied.*

---

[1] The Court questions whether this is an argument appropriately raised for the first time on summary judgment. The imposition of a constructive trust is a claim in itself and preferably should have been raised by DSI as a counter/cross-claim against Debtor and/or Fasil.

10.     There is no evidence to suggest that Fasil and/or the Debtor wrongfully obtained the Disputed Payment and, while they may eventually be enriched by it, there is nothing to suggest that such enrichment would be "unjust."[2]  By entering into the Escrow Agreement, DSI agreed to its expiration date and, then, took no steps to extend that date even when it became clear that Target had not completed its contractual payments.  DSI negotiated its bargain under the Escrow Agreement and, for whatever reason, failed to protect fully its interests.  The Court will not now rewrite that bargain.  DSI will presumably receive a *pro rata* share of the Disputed Payment as a general unsecured creditor of Debtor's estate.

11.     In opposing the Cross-Motion, DSI argues that a genuine issue of material fact exists as to whether the parties were engaged in a "joint venture":

> [A]s evidenced by the express terms of the Escrow Agreement, the relationship among the parties is not that of a debtor/creditor.  This is especially true insofar as the provisions of the Escrow Agreement go beyond usual credit repayment, rather, the parties were to "share" in the Target contract payments. . . .
>     The lack of debtor/creditor relationship, coupled with the express terms of the Escrow Agreement and conduct of the parties, evidence that the at-issue relationship was that of a joint venture."

12.     A joint venture has been defined as an association of two or more persons formed to carry out a single business enterprise for profit.  *Inland Steel v. Pequignot,* 608 N.E.2d 1378, 1382 (Ind.Ct.App. 1993).  For a joint venture to exist, the parties must be bound by an express or implied contract providing for "(1) a community of interests, and (2) joint or mutual control, that is, an equal right to direct and govern the undertaking, that binds the parties to such an agreement." *Id.* (quoting *Boyer v. First National Bank of Kokomo,* 476 N.E.2d 895, 897 (Ind.Ct.App.1985)). A joint venture

---

[2] Of course, Debtor itself will not be enriched, although the claimants and creditors of its bankruptcy estate will be.

is similar to a partnership except that a joint venture contemplates only a single transaction. *Id.* A joint venture agreement must also provide for the sharing of profits. *Id.*

13. In the Court's opinion, there is no genuine issue of material fact as to whether the parties were involved in a joint venture. The undisputed facts show that DSI supplied raw materials that were used by Debtor to fulfill its obligations to Fasil under the Amended Manufacturing Agreement. While there may have been a community of interests, there is no evidence that DSI had any control over the project, notwithstanding the fact that the supplies were critical to the Target Contract. Furthermore, contrary to DSI's argument, the Escrow Agreement itself did not establish a joint venture. The Agreement merely provided a means to guarantee payment for Debtor and DSI; it did not otherwise elevate DSI from supplier to joint venturer.[3]

14. For the reasons stated above, the Court concludes, as a matter of law, that DSI has no legal or equitable claim to or in the Disputed Payment. The Court, therefore, denies DSI's Motion and grants Debtor and the Committee's Cross-Motion. A judgment order consistent with these Findings and Conclusions shall be issued contemporaneously herewith. The Court will also issue a scheduling order to deal with the remaining issues presented by Debtor's Complaint in due course.

###

---

[3] The Court notes that per Paragraph 14 of the Amended Manufacturing Agreement, Fasil and Debtor explicitly state that the Agreement "shall not create any joint venture, partnership or other similar relationship between the parties."

Distribution:

Peter N. Pross
Timothy L. Black
Jeffrey A. Hokanson
Grant F. Shipley
UST